UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

MICHAEL R. GARRETT,

        Plaintiff,                Case No. 2:12-cv-357

v.                                        Honorable Robert Holmes Bell

MITCH PERRY,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Michael R. Garrett, an inmate currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983 in the Eastern District of Michigan, against Defendants Warden Mitch Perry, T. LaFond, L. Olson, Cecil Daley, J. Yoak, J. Cebula, J. Young, M. Shullick, Patricia Lamb, D. KNM, Teresea L. Steed, Duncan McLaren, Jeff Woods, Michael Sibbald, and Unknown Party named as John Doe. Plaintiff was previously confined at the Newberry Correctional Facility (NCF) in Newberry, Michigan, as well as at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan. According to Plaintiff's complaint, Defendants work at either NCF or KCF.

Plaintiff claims that NCF healthcare staff improperly stopped regular daily medications without justification for a large painful rash, chest pain, dizziness, painful urinary infrequency and a foot infection. Plaintiff made requests for treatment on November 10, 2011, January 18, 2012, March 23, 3012, and April 19, 2012, and was sent to healthcare on December 2, 2011, January 4, 2012, January 10, 2012, twice on January 19, 2012, March 18, 2012, March 19, 2012, March 23, 2012, March 29, 2012, March 31, 2012, and April 20, 2012. Plaintiff complains that he has not received a proper diagnosis, treatment, or medication for his various health problems.

Plaintiff states that on December 2, 2011, the "doctor or nurse" told Plaintiff not to worry about his chest pain or "viral pains." On January 19, 2012, Defendant Steed admitted that she was frustrated with Plaintiff, but kept asking what was wrong and answering her own questions. On March 18, 2012, Defendant Steed displayed hostility toward Plaintiff. On March 23, 2012, showed Plaintiff medical records which indicated that he had a dangerously low white blood cell count. Defendant Steed did not offer any diagnosis or treatment. On March 29, 2012, Defendant Shullick

told Plaintiff that he was "stuck with him" and that "it's a 1 to 1,000 ratio." Plaintiff took this to mean that Shullick had to see 1,000 other patients before Plaintiff. On March 31, 2012, a nurse said that there was some irregularity in Plaintiff's EKG, and called another nurse lazy and called Plaintiff a stupid homosexual. Plaintiff states that he filed a grievance on December 27, 2011, regarding problems with healthcare, but that the problems have not stopped. Plaintiff notes that on April 20, 2012, Defendant Steed took less than 7 minutes to check Plaintiff's chest are for pain, and only took his blood pressure and temperature. Defendant Steed told Plaintiff that there was nothing wrong with him. Plaintiff claims that healthcare Defendants were deliberately indifferent to his medical needs and seeks damages, as well as injunctive and declaratory relief.

Plaintiff also asserts that after he requested additional law library time, he was improperly removed from the law library schedule on August 30, 2011, which forced him to miss Federal Court deadlines. Plaintiff states that after this incident, he was removed from the law library call-out schedule every time he requested extra law library time. Plaintiff claims that Law Library Staff Members Cebula and Yoak were made aware of the problem, but failed to correct it. Plaintiff filed a grievance regarding the August 30, 2011, incident and appealed the denial of the grievance to step III. Plaintiff complains that he did not receive the step III response until February 9, 2012, over 5 months after the beginning of the grievance process in violation of MDOC policy. Plaintiff alleges that Mr. Pittman did not conduct an interview at step I of the grievance procedure. Plaintiff claims that this conduct violated his rights under the First Amendment and seeks damages and injunctive relief.

Plaintiff claims that "for a very long period of time," staff at NCF made sure that Plaintiff's laundry was not properly washed. This caused Plaintiff to become very ill and suffer pain.

Plaintiff states that he was repeatedly given dirty bed sheets with blood stains on them, as well as dirty clothes. Plaintiff states that MDOC staff used gloves to handle his clothes and bedding. Plaintiff seeks damages and injunctive relief.

Plaintiff claims that KCF staff retaliated against him for filing grievances. Plaintiff states that he was forced to filed grievances because staff kept erroneously opening his legal mail and taking him off the law library call-out schedule. Plaintiff states that procedure was not followed when handling his grievance number KCF 11-09-01010-23e, in that Plaintiff was never interviewed or given a grievance receipt. At step II, Plaintiff was not given the form until October 21, 2011, the day the step II appeal was due. Plaintiff had repeatedly requested the form and also requested an extension of time to file the step II appeal. Plaintiff claims that he was subsequently transferred to URF in retaliation for filing the grievance, and that other inmates transferred during that time period were transferred for having misconduct convictions.

Plaintiff claims that his legal property was erroneously confiscated and that he was forced to purchase a footlocker from the MDOC before they would return his legal property. Plaintiff states that by the time he ordered a footlocker and received his property back, his Federal Court deadline had elapsed. Plaintiff also claims that he ordered legal materials and envelopes, but never received them.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that his Eighth Amendment rights were violated when NCF staff

returned his laundry to him without washing it, which caused Plaintiff to become ill. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff claims that he was repeatedly given dirty bed sheets by staff at NCF, as well as dirty clothes. However, Plaintiff fails to specify any particular Defendant in relation to this claim, other than Defendant LaFond, who denied Plaintiff's grievance on this issue. In the step I grievance response, Defendant LaFond stated:

> Prisoner did see health care for his complaint and was given a medication to use, however Health services did not confirm that his injury was caused by the laundry, nor that it was severe, as he claims. Prisoners [sic] laundry is being washed in accordance with the Housekeeping schedule.
>
> ***
>
> The laundry and housekeeping plan are being followed correctly. Prisoner was advised not to pack his laundry bag so full when sending to be washed.

(Docket #1, p. 51 of 59.) It is clear from the record that Defendant LaFond merely responded to Plaintiff's step I grievance. Defendant LaFond cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Therefore, this claim is properly dismissed.

Plaintiff also states that Defendant Steed and "NCF healthcare staff" violated the Eighth Amendment when they stopped regular daily medications with justification for a painful rash, chest pain, dizziness, painful urinary infrequency, and a foot infection. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

As noted above, Plaintiff alleges that he made requests for treatment on November 10, 2011, January 18, 2012, March 23, 3012, and April 19, 2012, and was sent to healthcare on December 2, 2011, January 4, 2012, January 10, 2012, twice on January 19, 2012, March 18, 2012, March 19, 2012, March 23, 2012, March 29, 2012, March 31, 2012, and April 20, 2012. On July 19, 2011, in response to Plaintiff's kite regarding the stoppage of his daily Aspirin, Defendant Steed stated that "No one took you off but your prescription has expired. I have requested a chart review for renewal of this medication. You will be called when it arrives." (Docket #1, p. 36 of 59.)

Plaintiff complains that he has not received a proper diagnosis, treatment, or medication for his various health problems. Plaintiff states that on December 2, 2011, the "doctor or nurse" told Plaintiff not to worry about his chest pain or "viral pains." On January 19, 2012, Defendant Steed admitted that she was frustrated with Plaintiff, but kept asking what was wrong and answering her own questions. On March 18, 2012, Defendant Steed displayed hostility toward Plaintiff. On March 23, 2012, showed Plaintiff medical records which indicated that he had a dangerously low white blood cell count. Defendant Steed did not offer any diagnosis or treatment. On March 29, 2012, Defendant Shullick told Plaintiff that he was "stuck with him" and that "it's a 1 to 1,000 ratio." Plaintiff took this to mean that Shullick had to see 1,000 other patients before

Plaintiff. On March 31, 2012, a nurse said that there was some irregularity in Plaintiff's EKG, and called another nurse lazy and called Plaintiff a stupid homosexual. Plaintiff states that he filed a grievance on December 27, 2011, regarding problems with healthcare, but that the problems have not stopped. Plaintiff notes that on April 20, 2012, Defendant Steed took less than 7 minutes to check Plaintiff's chest are for pain, and only took his blood pressure and temperature. Defendant Steed told Plaintiff that there was nothing wrong with him.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). As noted above, Plaintiff was seen by health care staff on numerous occasions and is complaining that he has not received a proper diagnosis, treatment or medication for his condition. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). Therefore, the court will dismiss Plaintiff's Eighth Amendment medical care claims.

Plaintiff claims that his First Amendment right of access to the courts was violated when Defendants improperly removed him from the law library call-out schedule whenever he requested extra law library time and that Defendants Cebula and Yoak failed to correct the problem when they were made aware of it. Plaintiff's assertion that this conduct violated his right of access

to the courts is baseless. Plaintiff has offered no legally supportable reason that he cannot file an action. He desires a law library. The right of access to the courts has never been equated with the access of legal materials at the prison library. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (a sub-¶ library or legal assistance program does not establish relevant actual injury). Plaintiff's implication that the lack of access to a law library rendered him unable to file a lawsuit, clearly means that Plaintiff was unable to file the *quality* of the lawsuit that he desired, not that he was unable to file a lawsuit at all. Even though *Bounds* gave inmates the tools to attack their sentences and challenge their conditions of confinement, the inability of an inmate to become a "litigating engine" is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 at 353-54. Plaintiff fails to specify why he requires a law library in order to file the type of claim protected by the right of access to the court, i.e., direct appeals from convictions, habeas petitions, or civil rights actions. *Lewis*, 518 U.S. at 353-54. It appears that Plaintiff's claim is that he is entitled to be a "litigating engine," which this Court will not allow. Because Plaintiff cannot show actual injury or that he has suffered any litigation-related detriment, Plaintiff fails to state a claim that his limited access to a law library resulted in a denial of access to the courts.

Plaintiff claims that his legal property was confiscated and that he was forced to purchase a footlocker in order to have it returned. By the time that Plaintiff was able to order the footlocker and received his legal property, his Federal Court deadline had elapsed. Plaintiff also claims that he ordered legal envelopes, but did not receive them. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance

to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

The attachments to Plaintiff's complaint show that on October 13, 2009, he requested an additional duffel bag for his excess legal property. Assistant Deputy Warden of Housing Kathy Olson responded that Plaintiff must have a hearing on the request and that if he needed additional

storage, he would have to fill out a disbursement for a legal footlocker. (Docket #1, p. 40 of 59.) Plaintiff alleges that his property was taken until he was able to purchase a footlocker. However, Plaintiff fails to specify the nature of the property that was taken. Nor does Plaintiff allege the nature of the action he was pursuing at the time his property was taken, or why he needed his legal property in order to litigate the action.

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in

the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416. Because Plaintiff's complaint fails to comply with this requirement, his access to courts claims are properly dismissed.

Finally, Plaintiff claims that KCF staff retaliated against him for filing grievances by taking him off the law library call-out schedule and transferring him from KCF to URF. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff meets the first prong of the test set forth in *Thaddeus-X*. Plaintiff, however, cannot show that his transfer to URF was an adverse action taken against him from filing a grievance. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in

protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also* 630 F.3d 468 (6th Cir. Dec. 2010).

Plaintiff's transfer was from KCF, which houses level I and II prisoners, to URF, which houses level I, II and IV prisoners. There is no indication that Plaintiff's security level was changed in the course of the transfer. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398.

Furthermore, although temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d

408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

The court notes that Plaintiff's assertion that his removal from law library call-out or his transfer were motivated by a desire to retaliate against him for filing grievances are completely conclusory and unsupported. Plaintiff fails to specify which defendants, if any, he named in the grievances, the dates of the grievances, or who was responsible for the alleged retaliatory conduct. Because Plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), his retaliation claims are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

Finally, the Court finds that Plaintiff's pending motions for appointment of counsel, to confirm or deny claims, for emergency relief, for proving an official record, for a three judge panel, for independent medical exam, for interference, for disclosure of medical records, and for a more definite statement (docket ##3-4, 7-11, 19, 21-22, 24-26, 28-29, 36, and 39) will be denied as moot.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.

Dated: March 1, 2013                         /s/ Robert Holmes Bell
                                                                         ROBERT HOLMES BELL
                                                                         UNITED STATES DISTRICT JUDGE