UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL R. GARRETT,

        Plaintiff,

v.                                 Case No.  2:12-cv-357
                                 HON.  ROBERT HOLMES BELL

MATTHEW SHULLICK, et al.,

        Defendant.

_____/

REPORT AND RECOMMENDATION

Plaintiff Michael R. Garrett filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants for a violation of his Eighth Amendment rights.  Plaintiff's remaining claim is against Defendant Nurse Practitioner Matthew Shullick.  Plaintiff alleges that he failed to receive appropriate medical care between November of 2011, and April of 2012.  Plaintiff complained that he suffered with a rash, chest pain, dizziness, urinary tract infection, and a foot infection.  Plaintiff alleges that Defendant Shullick or someone from the medical staff told Plaintiff "that he was 'stuck' with him, and it's 1 to 1000."  Plaintiff does not make any specific allegations against Defendant Matthew Shullick.  Defendant Shullick has filed a motion for summary judgment (Docket #168).  Plaintiff has not filed a response to Defendant's motion.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party

opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Defendant Shullick argues that he did not act with deliberate indifference in disregard to Plaintiff's medical needs. In fact, Defendant Shullick argues that he provided appropriate care to Plaintiff at all times. Defendant Shullick indicates that he was involved in Plaintiff's medical care and treatment between November of 2011, and April of 2012. Defendant Shullick states that

Plaintiff was seen by a nurse on October 18, 2011, complaining of a rash.  On examination the nurse found generalized patches of hives and Plaintiff was prescribed Benadryl.  Defendant Shullick saw Plaintiff on October 25, 2011, to examine his rash.  The rash was scattered on Plaintiff's body, but he exhibited no additional symptoms.  Plaintiff complained that the Benadryl was ineffective.  As a result, Defendant Shullick prescribed prednisone, an anti-inflammatory medication, to treat the symptoms.  Plaintiff was instructed to return to healthcare if symptoms persisted.

Plaintiff returned to healthcare on November 12, 2011, and was examined by Dr. Berhane.  Dr Berhane found that Plaintiff's rash had resolved.  On December 1, 2011, Plaintiff complained of tightness in his chest.  Plaintiff complained of muscle weakness, which began after taking prednisone.  Plaintiff was provided with Motrin and instructed to contact health care if his symptoms continued.  Defendant Shullick saw Plaintiff the next day.  Plaintiff complained of mild chest pain without any other symptoms.  Plaintiff believed the pain was due to something that he had eaten.  Defendant Shullick suspected a non-serious condition of gastritis or musculoskeletal pain. Defendant Shullick told Plaintiff to continue to treat his symptoms with Motrin and to avoid foods that caused discomfort.

On December 3, 2011, Plaintiff was examined by a physician's assistant who noted that Plaintiff's rash was nearly resolved.  Plaintiff complained about the frequency of his need to urinate.  A urine sample was taken to rule out an infection as the cause.  On December 28, 2011, Plaintiff submitted a kite complaining that he had not received appropriate medical care regarding his complaints of chest pain.

On January 4, 2012, Plaintiff was examined by a medical provider after he complained of itching on his left shoulder.  Upon examination a nurse noted that Plaintiff had a one half by one half centimeter lesion without surrounding inflamed tissue on his shoulder.  Plaintiff was

not taking over the counter pain medication.  Plaintiff indicated that prednisone had improved his skin condition, but he had stopped taking the medication.  Plaintiff was referred to Defendant Shullick.  Defendant Shullick reviewed Plaintiff's medical records on January 10, 2012, but did not find anything that required urgent treatment or care.

Plaintiff was seen by a nurse on January 19, 2012.  Upon examination, Plaintiff complained of tightness in his chest which was associated with meals.  Plaintiff had not taken an antacid.  Plaintiff presented no serious or urgent care symptoms, so he was referred for a follow-up examination with a medical service provider.  Defendant Shullick saw Plaintiff that same day regarding complaints of stomach pain.  Examination revealed no objective findings.  Defendant Shullick informed Plaintiff that he likely had mild gastritis and possibly a food borne illness. Defendant Shullick prescribed the antacid Omeprazole.

Plaintiff was seen by a nurse on the evening of March 18, 2012, for complaints of chest pain.  Plaintiff complained that his symptoms had worsened over the past couple of weeks. Plaintiff did not present an urgent medical need, so the nurse scheduled him to be seen the next morning.  Due to Plaintiff's repeated vague complaints and history of paranoia, the nurse referred Plaintiff for a mental health evaluation.

Defendant Shullick saw Plaintiff the next day.  Plaintiff complained of significant chest pain with an intensity of 8 or 9 out of 10.  Plaintiff denied any other symptoms.  Plaintiff complained that the Omeprazole was ineffective.  Defendant Shullick examined Plaintiff and noted tenderness where the ribs joined the sternum.  Based upon Plaintiff's discomfort, and the ineffectiveness of antacids, Defendant Shullick diagnosed Plaintiff with Costochondritis. Costochondritis involves inflamation where the upper ribs join with the cartilage that holds the ribs to the breastbone or sternum.  Costochondritis is generally a harmless condition that goes away

without treatment.  It is common to take NSAIDs such as Motrin or Aleve to relieve the symptoms.

Defendant Shullick prescribed Motrin.  As a precaution, Defendant Shullick scheduled an EKG and

ordered Plaintiff's outside medical records to rule out the possibility of a heart condition.  Plaintiff

was scheduled for a follow-up visit in one week.

Plaintiff came to the medical department on March 29, 2012, worried that something

was wrong, because he had the same pain.  Plaintiff was taking ibuprofen, but indicated that he did

not like to take medication.  The nurse talked with Plaintiff about Costochondritis.  Defendant

Shullick saw Plaintiff later that day for chest discomfort.  Plaintiff stated the antacid and ibuprofen

did not work.  Examination revealed no objective reason for Plaintiff's complaints.  Defendant

Shullick added as a diagnosis intermittent dysrhythmia, GERD, or hiatal hernia as possibilities for

Plaintiff's discomfort.   Defendant Shullick requested a rhythm strip to check the rhythm of

Plaintiff's heart.  Defendant Shullick also recommended an exercise program for Plaintiff.

On March 31, 2012, Plaintiff completed the rhythm strip which was normal indicating

no dysrhythmias.  Plaintiff was next seen on April 20, 2012, after he made a complaint of chest pain.

Plaintiff was not in distress at that time, so a follow up appointment was made.  Plaintiff was seen

by Dr. Bonefeld on April 23, 2012.  Dr. Bonefeld ordered a chest x-ray to rule out an abscess in

Plaintiff's chest.  The chest x-ray was normal.   Plaintiff was transferred to another prison facility

in July 2012.

Plaintiff has not shown that Defendant Shullick acted with deliberate indifference

toward any serious medical need that Plaintiff presented.  Defendant Shullick showed that he

provided appropriate care for Plaintiff and continued to evaluate and treat Plaintiff's symptoms.

Plaintiff has not shown that Defendant Shullick did anything wrong while examining and treating

Plaintiff.  Nor has Plaintiff  shown that Defendant Shullick acted with deliberate indifference to any

of Plaintiff's medical needs.  In the opinion of the undersigned, Defendant Shullick is entitled to dismissal from this action.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #168) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: October 6, 2015                               /s/ TIMOTHY P. GREELEY_____
                                                     TIMOTHY P. GREELEY
                                                     UNITED STATES MAGISTRATE JUDGE